IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BRENT CLARK,

        **Plaintiff,**

   v.                                              Civil Action No. 5:21-CV-27
                                                              (BAILEY)

UNITED STATES OF AMERICA,

        **Defendant.**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE PLAINTIFF'S EXPERT DISCLOSURE
AND MOTION FOR SUMMARY JUDGMENT**

    Comes now the Defendant, the United States of America, by and through undersigned counsel, and in support of its Motion to Strike Plaintiff's Expert Disclosure and Motion for Summary Judgment, states as follows:

**I.    INTRODUCTION**

    Through this Motion, the United States of America ("United States") seeks an order excluding the testimony of Plaintiff's only identified medical expert witnesses, Andrew Wae Wong, M.D., for failure to make sufficient expert witness disclosures. *See* Fed. R. Civ. P. 26(a)(2) and 37(c). In the event that Plaintiff's expert witness testimony is excluded, the United States seeks summary judgment in its favor based upon Plaintiff's inability to establish medical negligence through expert testimony as required under federal law and the West Virginia Medical Practice Liability Act (MPLA), W.Va. Code §§ 55- 7B-1 *et seq.* (2015 Repl. Vol.).

**II.    FACTS**

    Plaintiff, Brent Clark, Federal Register Number 38405-068, is a former federal inmate now living in the Pittsburgh, Pennsylvania area. On February 19, 2021, Plaintiff brought the instant complaint pursuant to the Federal Tort Claims Act ("FTCA"). Specifically, Plaintiff alleges

employees of the United States, acting within the scope of their employment, failed to provide medically necessary follow-up care and supervision for Plaintiff's alleged head injuries that apparently occurred on December 17, 2018 and December 19, 2018, while he was housed in the Special Housing Unit ("SHU") at the Federal Correctional Institution Morgantown in Morgantown, West Virginia ("FCI Morgantown"). *See* ECF No. 1 at PageID #6.

On June 9, 2022, Plaintiff filed Plaintiff's "Medical Expert Disclosure." *See* ECF No. 96. The Plaintiff's Expert Disclosure contains four documents: (1) Dr. Clark's filed "Medical Expert Disclosure" which described what the disclosure contains; (2) Dr. Wong's "Medical Certification of Permanent Disability;" (3) the original Certificate of Merit against Dr. Dankwa; and (4) a nearly identical Certificate of Merit against Ms. Corbin. *See Id.*[1]  Thus, Plaintiff has identified one expert: Andrew Wae Wong, M.D., an expert in the field of "neurological and neuromuscular conditions." *See Id*. at PageID #1033-34 and 1039-40.   Plaintiff offers this doctor to provide expert testimony that the acts or omissions of the United States resulted in injuries to Plaintiff that could have been prevented had Plaintiff been properly diagnosed and treated.  See *Id*., *generally*.  Plaintiff has not identified any other medical expert to testify regarding breach of standard of care or causation.

### III.     STATEMENT OF LAW

**A. APPLICABLE STATUTES**

1. <u>The Federal Tort Claims Act</u>

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680 is the exclusive money damages remedy for negligent acts or omissions of federal government employees acting within the scope of their employment.  28 U.S.C. § 2679.  The FTCA operates as a limited waiver of sovereign immunity. *See Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).  It does not

---

[1] For purpose of this Memorandum, the four documents which make up ECF No. 96 shall be referred to as "Plaintiff's Expert Disclosure."

create new causes of action, but merely allows the United States to be sued and held liable in tort "in the same respect as a private person under the law of the place where the act occurred." *Medina* at 223; 28 U.S.C. § 1346(b) (1). Because the alleged negligent acts occurred in West Virginia, Plaintiff's claims must be decided pursuant to the substantive law of West Virginia. *See Eichelberger v. United States*, No. 1:04-CV-45, 2006 U.S. Dist. LEXIS 19250, at *6, 2006 WL 533399 (N. D. W. Va. Mar. 3, 2006).

2. The West Virginia Medical Professional Liability Act

In West Virginia, medical malpractice litigation is controlled by the Medical Professional Liability Act (MPLA), W. Va. Code § 55-7B-1 *et seq.* (2015 Repl. Vol.). Section 3 of the MPLA establishes the elements of proof necessary to sustain a medical malpractice claim: (1) the health care provider failed to meet the standard of care; and (2) such failure was a proximate cause of the injury or death. *See* W. Va. Code § 55-7B-3(a). Proximate cause is generally understood to be the last negligent act contributing to the injury and without which the injury would not have occurred. *See Sexton v. Grieco*, 613 S.E.2d 81 (W. Va. 2005).

The MPLA also establishes the proof required for a "loss of chance" claim. Under such a theory, a plaintiff must establish, to a reasonable degree of medical probability, that had the accepted standard of care been afforded the patient, there was greater than a 25 percent chance of improvement, recovery, or survival. *See* W. Va. Code. § 55-7B-3(b).

B. APPLICABLE CASE LAW AND RULES

1. Expert Witnesses Generally

Plaintiffs in a medical malpractice case bear the burden of proving that negligence and lack of skill on the part of the medical provider proximately caused the injury suffered. *See Farley v. Shook*, 629 S.E.2d 739 (W. Va. 2006). Expert testimony is usually required to meet that burden.

3

*See Bellomy v. United States*, 888 F. Supp. 760, 763-64 (S. D. W. Va. 1995). Where a plaintiff does not produce expert testimony to show that a medical provider deviated from the standard of care, and the deviation caused the injury complained of, the defending party is entitled to summary judgment. *See Harrison v. United States*, No. 2:07-00696, 2009 WL 36545 (S. D. W. Va. 2009); *Sharpe v. United States*, 230 F.R.D. 452 (E. D. Va. 2005).

With few exceptions not applicable here, the MPLA also requires expert testimony. It provides that the applicable standard of care and a defendant's failure to meet the standard of care, if at issue, "shall be established . . . by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court." W. Va. Code § 55-7B- 7(a); *see also Neary v. Charleston Area Med. Ctr.*, 460 S.E.2d 464 (W. Va. 1995) (per curiam) (General rule that medical malpractice can be proved only by expert witnesses).

2. Federal Rule of Evidence 702 Governs Expert Witness Testimony

Rule 702 allows a witness who is qualified as an expert to testify in the form of an opinion if, among other things, the testimony is "based on sufficient facts and data" and that the expert has "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 54 (4th Cir. 1993)("[A] court may refuse to allow a generally qualified expert to testify if his factual assumptions are not supported by the evidence.") (Internal citations omitted).

3. Expert Disclosures, Fed. R. Civ. P. 26(a)

Under Fed. R. Civ. P. 26(a), a party that intends to rely on expert testimony is required to furnish, at a time established by the court, a report containing, among other information, "complete

4

statement of all opinions" that the expert will offer, and "the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Thus, "the expert report should be written in a manner that reflects the testimony the expert witness is expected to give at trial." *Sharpe v. United States,* 230 F.R.D. 452, 458 (E. D. Va. 2005).

The report must be "detailed and complete" and must state "the testimony the witness is expected to present during direct examination together with the reasons therefor." *Id.* "The expert report should be written in a manner that reflects the testimony the expert witness is expected to give at trial." *Id*. at 458. In the Advisory Committee's Note to the 1993 amendments to Fed. R. Civ. P. 26, it emphasizes that the report to be provided under Rule 26(a)(2)(B) should be a "detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." *Id*. at 452, 458 (quoting Fed. R. Civ. P. 26 (Advisory Committee's Note to 1993 amendments)). This was to avoid the cursory descriptions of an expert's testimony in the parties' interrogatories that were at times "so sketchy and vague, it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of a witness." *Id*. at 458 (quoting Fed. R. Civ. P. 26 (Advisory Committee's Note to 1993 amendments)).

To that end, Rule 26 "mandates a complete and detailed report of the expert witness's opinions, conclusions, and the basis and reasons for them." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 210 (4th Cir. 2017) (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)). "Expert reports must not be sketchy, vague or preliminary in nature" and "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Bresler*, 855 F.3d at 210 (quoting *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998)). "A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Bresler*, 855 F.3d at 210 (quoting *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271 (4th Cir. 2005)).

    4.  <u>Sanctions for Failure to Provide Sufficient Expert Disclosures, Fed. R. Civ. P. 37(c)</u>

The Federal Rules of Civil Procedure require a party to disclose expert witnesses pursuant to Rule 26(a)(2)(A). When a party fails to comply with Rule 26(a)(2), Rule 37(c)(1) states that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Fourth Circuit has held that the "Federal Rules impose an 'automatic sanction' of exclusion of a party's expert witness for failure to adhere to the expert witness requirements set forth in Rule 26(a)." *Campbell v. United States*, 470 Fed. Appx. 153, 156 (4th Cir. 2012).

While exclusion may not be required if the non-compliance was "substantially justified or harmless," the non-disclosing party bears the burden of proving that his failure to comply with Rule 26(a)(2) was harmless or substantially justified. *See Campbell*, 470 Fed. Appx. at 155. *Sharpe* is illustrative of when it is proper to strike an expert witness disclosure. *Sharpe* was a medical malpractice action under the FTCA. Sharpe's widow claimed that employees of the United States

6

were negligent in failing to timely diagnose Sharpe's lung cancer. Sharpe's widow provided two Rule 26(a)(2)(B) expert witness reports. One report indicated that the expert reviewed Sharpe's medical records and discussed certain x-rays with a radiologist. The report contained a brief chronology of Sharpe's treatment with some notations indicating treatment that was not provided. The expert concluded that "there are numerous opportunities where further investigation may have led to an earlier diagnosis of cancer and may have resulted in the possibility of more definitive treatment and increased risk of survival." *Sharpe*, 230 F.R.D. at 455.

The other expert report was in letter form and indicated that the expert had reviewed Sharpe's records and the report of the other expert. The report stated in one vague paragraph that if some treatment had been provided earlier, "the potential for intervening in [Sharpe's] non- small cell cancer would have been greater." *Id*. The court granted the United States' motions to exclude the experts' testimony and for summary judgment. The court reasoned that neither expert report contained the required complete statement of opinions and the basis for those opinions. *Id*. at 458. Additionally, the court noted, neither report was sufficiently detailed and complete enough to enable adequate preparation by the United States. "An expert's report must be 'detailed and complete' in order to 'avoid the disclosure of 'sketchy and vague' expert information." *Id*. *citing Sierra Club*, 73 F.3d at 571. The court concluded that Rule 26 required expert reports to contain sufficient detail to avoid forcing opposing counsel to "depose an expert in order to avoid ambush at trial" and to "decrease the need for expert depositions and conserve resources." *Id*. at 459. The Court found that in the absence of substantial justification for the inadequate disclosures, exclusion of the expert testimony was required. *Id.*

The court also granted summary judgment in favor of the United States. The court found that because Sharpe's widow was precluded from presenting the proffered expert testimony, she

would not be able to establish a causal link between the death of Mr. Sharpe and the action or inaction of the United States. *Id*. at 461. The same result in this action is appropriate.

## IV. ARGUMENT

In short: Dr. Wong's report does not include the "how" and "why" necessary to make a sufficient expert disclosure and does not include clear requirements from Rule 26(a). The disclosure for Dr. Wong offers only conclusory statements of his opinions and provides no basis or reasons for those opinions. It does not make clear exactly what the standard of care would involve in this matter, or what could have been done differently to affect the Plaintiff's outcome. Dr. Wong's disclosure is insufficient under Rule 26, and exclusion of the testimony is the appropriate remedy.

The Plaintiff's Expert Disclosure lacks: (1) more than a bare-bones explanation of *how* the standard of care was breached; (2) an explanation of what could have been done differently to improve the Plaintiff's chances of recovery; (3) the facts or data considered by the witness in forming them; (4) a CV or resume of Dr. Wong, including a list of all publications authored in the previous 10 years; and (5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition.[2]

### A. DR. WONG'S REPORT DOES NOT SUFFICIENTLY EXPLAIN HOW THE STANDARD OF CARE WAS BREACHED

Dr. Wong appears to hold the opinion that Dr. Dankwa and Ms. Corbin breached the standard of care in the following ways:

- by "failure to follow the accepted standard of care for the treatment of a head injury;"[3]

---

[2] Plaintiff's Expert Disclosure also neglects to include a list of exhibits pursuant to Fed. R. Civ. P. 26(a)(B)(2)(iii), presumably Plaintiff will not rely on any exhibits not specifically referenced in the Plaintiff's Expert Disclosure.
[3] *See* ECF No. 96 at PageID #1031, at ¶ 3.

8

- "when the applicable standard of care for follow-up care of the plaintiff's symptoms of a probable subarachnoid hemorrhage was breached;"[4]

- "when the applicable standard of care for the treatment of Plaintiff's head injuries was breached, 12/18/2018-2/26/2019;"[5]

- "when the plaintiff's medical care was abandoned by the defendants, the plaintiff's head injuries were not appropriately treated;"[6]

- "when [they] failed to provide a proper history and physical examination for the injured plaintiff after repeatedly being requested to do so by the plaintiff. History and physical examination is [sic] the minimal standard of care evaluation medically necessary for a patient that reports head injury;"[7] and

- the Plaintiff's healthcare was "discontinued unreasonably."[8]

Dr. Wong continually references the breach of the standard of care throughout both the expert disclosure and certificate of merit, but there is no more detailed elaboration found throughout the Plaintiff's Expert Disclosure.

Taking the scattered and brief criticisms together, Dr. Wong's opinions boil down to the barest of assertions: <u>The Defendant, through its agents, failed to provide a proper history and physical examination in light of a head injury, and the care was discontinued amounting to abandonment</u>.

These conclusory statements do not state **how** the standard of care could have been met. The Defendant is left to guess: What needed to be done to provide a proper history that would have met the standard of care? What needed to be done to perform a physical examination that would have met the standards of care? How the examination after the Plaintiff's report of a fall was deficient? What constitutes abandonment under the standard of care? Given that Plaintiff was seen

---

[4] *Id.* at ¶4.
[5] *Id.* at ¶5.
[6] *See* ECF No. 96 at PageID #1032, at ¶ 2.
[7] *See* ECF No. 96 at PageID #1035 and 1040.
[8] *See* ECF No. 96 at PageID #1036 and 1041.

9

by a nurse after his alleged December 17, 2018 fall, what specifically about this evaluation was lacking?

The nature of Plaintiff's deficient disclosure was well illustrated at his June 29, 2022 deposition. There he testified that he intended to cross-examine Dr. Dankwa with medical literature that after his fall(s) she breached the standard of care by neglecting to order a head CT in light of his negative x-ray. This allegation could never be gleaned by a detailed reading of the Plaintiff's Expert Disclosure, and demonstrates the 'sandbagging,' unfair surprise, and thus far unsupported, nature of Plaintiff's allegations.[9] *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (The purpose of Rule 26(a) is to allow litigants "to adequately prepare their cases for trial and to avoid unfair surprise."); *see also Bresler*, 855 F.3d at 210 (quoting *Ciomber*, 527 F.3d at 642) ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify.").

Plaintiff's incomplete disclosure on the standard of care has left the United States guessing about the who, what, when, where, and how regarding Plaintiff's claims of medical negligence. Rule 26 was intended to prevent this result.

**B. DR. WONG'S REPORT IS VOID OF ANY EXPLANATION AS TO HOW ANY BREACH IN THE STANDARD OF CARE PROXIMATELY CAUSED PLAINTIFF'S ALLEGED INJURIES OR HOW DIFFERENT CARE WOULD HAVE LED TO A DIFFERENT OUTCOME**

Dr. Wong maintains throughout Plaintiff's Expert Disclosure that the failure of the Defendant to provide a proper history and physical examination in light of a head injury, and abandonment, proximately caused the Plaintiff's various symptoms and conditions. In particular, the Plaintiff alleged the lack of a history and physical caused the Plaintiff's various neurological impairments, including his seizure disorder and cognitive disfunction. Dr. Wong merely states

---

[9] The deposition transcript is pending.

that "an undetected and untreated subarachnoid hemorrhage **is a reasonable explanation** for the plaintiff's resulting and ongoing symptoms." *See* ECF No. 96 at PageID #1036 and 1041. Dr. Wong goes on to state that the bleeding in the brain likely went undetected, and states in various sections of his report that the alleged lack of care has caused Plaintiff's alleged neurological and mental injuries. *See ECF No. 96,* generally.

Dr. Wong merely states that the breaches of the standard of care caused Plaintiff's neurological symptoms, and there is zero explanation as to **how** the alleged breaches caused any of the Plaintiff's injuries, or lead to a loss of the Plaintiff's chance to recover. What medical condition progressed in light of the lack of alleged care? How long did it take to progress? Could it have been remedied at a certain point? How did it reduce the Plaintiff's chance to recover by greater than 25%, or any percentage?

In addition to a failure to "connect-the-dots" to explain proximate cause or loss of chance, the Plaintiff's Expert Disclosure does not explain what care, if rendered, could have improved the Plaintiff's chance of recovery. The Defendant is told it breached the standard of care, but is left to speculate as to what could have been done to allow the Plaintiff to recover. If there was no particular care which could have cured Plaintiff, there is no proximate cause.

Without any explanation of how Plaintiff could have improved or would not have been harmed if certain care was rendered, there is effectively no proximate cause posited by Dr. Wong. The Defendant does not know how to assess Plaintiff's claims. Plaintiff's expert disclosure seems to imply[10] some magical effect that would have occurred if the Defendant had taken a "proper" history and physical, and by the simple act of doing an additional test or asking different questions, the Plaintiff would have been cured of all further maladies related to his alleged fall. But it is

---

[10] Throughout his deposition, Plaintiff stated that "history and physical" was to be construed broadly such that it included certain additional care, which notably is not enumerated in the Expert Disclosure. *Transcript pending*.

obvious that some **additional or different care** must have been necessary to change Plaintiff's outcome. Dr. Wong neglects to inform us what different care that would be, and thus the Plaintiff's Expert Disclosure is deficient as to proximate cause.

### C. DR. WONG'S REPORT DOES NOT SUFFICIENTLY DESCRIBE THE FACTS AND DATA CONSIDERED

The certificates of merit attached to the Plaintiff's Expert Disclosure identify certain records which were reviewed when they were executed on January 11, 2021. However, the "Medical Certification of Permanent Disability" portion of Plaintiff's Expert Disclosure does not contain any additional facts and data considered by Dr. Wong in rendering his opinions.

Of note, it is apparent that Dr. Wong failed to update the facts and data he considered. Specifically, Dr. Wong's "Medical Certification of Permanent Disability" makes a reference to the Social Security Administration decision of Dr. Clark's disability determination.[11] However, his certificate of merit does not detail that he reviewed any Social Security records or upon what he could be basing this knowledge. Thus, the Disclosure clearly fails to meet Rule 26(a)(2)(B)(ii).

### D. DR. WONG'S REPOT DOES NOT CONTAIN A LIST OF ALL PUBLICATIONS AUTHORED IN THE PREVIOUS 10 YEARS

Dr. Wong's report contains no list of publications as required by Rule 26. Thus, the disclosure clearly fails to meet Rule 26(a)(2)(B)(iv).

### E. DR. WONG'S REPORT DOES NOT CONTAIN A LIST OF PRIOR TESTIMONY

Dr. Wong's report contains no list of prior testimony as required by Rule 26. Thus, the disclosure clearly fails to meet Rule 26(a)(2)(B)(v).

---

[11] Defendant disputes the representation of the Social Security Administration file made by the Plaintiff, but it is not germane to this Motion.

### F. CUMULATIVE EFFECT OF DEFICIENCIES

In the event that this Court does not consider any one of these deficiencies standing alone to merit the striking of the Plaintiff's Expert Disclosure, the Defendant implores the Court to consider them together.

The Fourth Circuit has held that the "Federal Rules impose an 'automatic sanction' of exclusion of a party's expert witness for failure to adhere to the expert witness requirements set forth in Rule 26(a)." *Campbell v. United States*, 470 Fed. Appx. 153, 156 (4th Cir. 2012). However, exclusion may not be required if the non-compliance was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The non-disclosing party bears the burden of proving that his failure to comply with Rule 26(a)(2) was harmless or substantially justified. *See Campbell*, 470 Fed. Appx. at 155.

There is nothing to justify non-compliance of an expert disclosure so deficient in so many areas required by Rule 26(a). Such numerous deficiencies should never be considered harmless as it would provide disclosing parties motivation to delay cases or to obtain more time to put together a sufficient expert disclosure simply by not checking all of the boxes of Rule 26(a) the first time around.

### CONCLUSION

Without the testimony of an expert witness, Plaintiff is unable to prove that employees of the United States deviated from the standard of care, and that their conduct proximately caused Plaintiff's injuries. *See Harrison*, 2009 WL 36545, at 9. Accordingly, the United States is entitled to summary judgment.

WHEREFORE, the United States moves this Court to STRIKE the Plaintiff's Expert Disclosure, and GRANT Summary Judgment in favor of the United States due to the lack of required medical expert opinion on behalf of the Plaintiff.

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

By: */s/ Maximillian F. Nogay*
     Assistant United States Attorney
     W. Va. Bar # 13445

     */s/ Jordan V. Palmer*
     Assistant United States Attorney
     W. Va. Bar # 12899

     United States Attorney's Office
     P.O. Box 591
     1125 Chapline Street, Suite 3000
     Wheeling, WV 26003
     (304) 234-0100
     (304) 234-0112 fax
     Max.Nogay@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 7th day of July, 2022, a true and accurate copy of DEFENDANT'S MEMORANDUM IN SUPPORT OF IT'S MOTION TO STRIKE PLAINTIFF'S EXPERT DISCLOSURE AND MOTION FOR SUMMARY JUDGMENT was furnished for delivery via electronic mail to:

Brent Clark, pro se
bclark9941@gmail.com

                                                     By:   /s/ Maximillian F. Nogay