**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**BRENT CLARK**,

           Plaintiff,

v.                                       **Civil Action No. 5:21-CV-27**
                                                       Judge Bailey

**UNITED STATES OF AMERICA**,

           Defendant.

**ORDER STRIKING EXPERT, GRANTING
SUMMARY JUDGMENT AND IMPOSING SANCTIONS**

Pending before this Court are Plaintiff's *pro se* Motion for Summary Judgment to Determine Liability [Doc. 125], filed September 19, 2022, Defendant's Motion for Summary Judgment [Doc. 126], filed September 22, 2022, Defendant's Motion to Strike Plaintiff's Expert Disclosure and Motion for Summary Judgment and Sanctions [Doc. 149], Plaintiff's *pro se* Motion for Leave to Supplement Pursuant to Rule 26(e) [Doc. 155], filed November 14, 2022, and Defendant's Motions *in Limine* [Doc. 163], filed November 21, 2022.

This Court will first turn its attention to the issues surrounding the expert witness. The Government previously filed Defendant's Motion to Strike Plaintiff's Expert Disclosure and Motion for Summary Judgment [Doc. 101] based upon insufficiencies in plaintiff's expert report. Thereafter, plaintiff filed a Supplemental Medical Expert Disclosure [Doc. 105] and a Motion for Leave to Supplement Medical Expert Disclosure [Doc. 107]. Over the

1

Government's objections, this Court granted the plaintiff's Motion for Leave to Supplement Medical Expert Disclosure and denied the Government's Motion to Strike Plaintiff's Expert Disclosure and Motion for Summary Judgment [Doc. 114].

The Government now seeks to exclude the plaintiff's expert report based upon later gained information - primarily obtained during the deposition of plaintiff's expert, Dr. Wong, and from documents obtained after the deposition.

Based upon the information obtained, the following is clear:

1. This is a medical malpractice action brought under the Federal Tort Claims Act by Brent Clark, a former medical doctor and federal inmate, based upon treatment received at FCI Morgantown.

2. The Supplemental Medical Expert Disclosure [Doc. 105] was wholly written by Mr. Clark and submitted to Dr. Wong on July 13. Dr. Wong merely signed the report and returned it to Mr. Clark for mailing to the Clerk's office on July 16, 2022. Dr. Wong did not change a word of what was sent to him.

3. Despite the foregoing, Dr. Wong testified at his deposition, under oath, that he created the Supplemental Medical Expert Disclosure. [Doc. 150-5 at 4].

4. When asked if he "ma[d]e the first draft of [the Supplemental Medical Expert Report]," Dr. Wong responded, "I did not produce the draft, no." [Id.].

5. When asked to clarify why he said he "created" the draft, Dr. Wong responded, "I made additions and changes to it and made sure that the final one reflected what I truly thought." [Id.].

6. When asked how much of the draft he changed, Dr. Wong responded, "60%,

70%." [Id.].

7. When asked as to the difference, Dr. Wong responded, "In terms of words were changed, things were taken out, that kind of thing." [Id. at 5].

8. It was evident during the deposition that Dr. Wong had little command of the facts of the instant case or the relevant medical records. Dr. Wong frequently could not identify with specificity which records he relied upon in forming his opinions or which records were provided to him. Given his clear lack of knowledge of the case and his disclosed opinions, he made a number of admissions fatal to plaintiff's case, only to later immediately yield to plaintiff's prompting during re-direct.

9. The email which sent the final supplemental report includes the following: "The only new information that you have not already reviewed for the above past statements is the enclosed pdf of 5 pages. It is the New Orleans Criteria and CDC guidelines for CT scan eligibility for traumatic brain injury and a journal publication from the NIH with mortality rates for treated versus untreated subarachnoid hemorrhage patients that I've incorporated into this combined report." [Doc. 150-14].

10. Despite the fact that Dr. Wong had not seen the referenced material, the same was included as his opinions in the final supplemental report.

The facts of this case are hauntingly similar to the facts in the case of *In re Jackson Nat'l. Life Ins. Co. Premium Litigation*, 1999 WL 33510008 (W.D. Mich. Sept. 29, 1999) (Scoville, M.J.), *affirmed by* 2000 WL 33654070 (W.D. Mich. Feb. 8, 2000) (McKeague, J.), in which the purported expert witness had not prepared the expert witness report in violation of Fed. R. Civ. P. 26(a)(2) and the expert testified untruthfully concerning the authorship of the

3

report, and the attempts by defense counsel were unjustifiably impeded. The Court in that case precluded the plaintiffs from presenting the purported expert's testimony at trial.[1]

In this case, based upon the fact that the report contains the plaintiff's own opinions rather than Dr. Wong's, as evidenced by the reference to articles that Dr. Wong had not even seen and Dr. Wong's blatant falsifications under oath, this Court will exclude Dr. Wong and his opinions as tainted.

In response, the plaintiff argues that the plaintiff's 6/5/2022 expert disclosure is sufficient. This argument overlooks the fact that Dr. Wong and all of his opinions are excluded due to the taint.

The Federal Tort Claims Act ("FTCA"), 28 U. S. C. §§ 2671–2680, is the exclusive money damages remedy for negligent acts or omissions of federal government employees acting within the scope of their employment. *See* 28 U. S. C. § 2679. The FTCA operates as a limited waiver of sovereign immunity. *See* **Medina v. United States**, 259 F.3d 220, 223 (4th Cir. 2001). It does not create new causes of action, but merely allows the United States to be sued and held liable in tort "in the same respect as a private person under the law of the

---

[1] Other courts have discounted expert testimony when experts merely express the opinions of the lawyers who hired them. *See, e.g.,* **C. Baxter Int'l. Inc. v. McGaw, Inc.**, 1996 WL 145778, at *4 (N.D. Ill. 1996), *aff'd in part and rev'd in part on other grounds*, 149 F.3d 1321 (Fed. Cir. 1998) (Court disregarded an expert report because the expert did not independently prepare his report); **Marbled Murrelet v. Pacific Lumber Co.**, 880 F.Supp. 1343, 1365 (N.D. Cal. 1995), *aff'd*, 83 F.3d 1060 (9th Cir.1996) (Finding that the expert's testimony lacked objectivity and credibility where it appeared to have been crafted by attorneys); **Occulto v. Adamar of N.J., Inc.**, 125 F.R.D. 611, 616 (D. N.J. 1989) (Noting that an expert cannot simply be an alter ego of the attorney who will be trying the case); **Manning v. Crockett**, 1999 WL 342715, at *3 (N.D. Ill. May 18, 1999) ("Allowing an expert to sign a report drafted entirely by counsel without prior substantive input from an expert would read the word 'prepared' completely out of the rule.").

place where the act occurred." *Id*. at 223; 28 U.S.C. § 1346(b)(1). Because the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia controls. *See Eichelberger v. United States*, 2006 WL 533399 (N.D. W.Va. Mar. 3, 2006) (Keeley, J.).

In West Virginia, medical malpractice litigation is controlled by the Medical Professional Liability Act ("MPLA"), W.Va. Code § 55-7B-1 et seq. (2015 Repl. Vol.). Section 3 of the MPLA establishes the elements of proof necessary to sustain a medical malpractice claim: (1) the health care provider failed to meet the standard of care; and (2) such failure was a proximate cause of the injury or death. *See* W.Va. Code § 55-7B-3(a). Proximate cause is generally understood to be the last negligent act contributing to the injury and without which the injury would not have occurred. *See Sexton v. Grieco*, 216 W.Va. 714, 613 S.E.2d 81 (2005).

The MPLA also establishes the proof required for a "loss of chance" claim. Under such a theory, a plaintiff must establish, to a reasonable degree of medical probability, that had the accepted standard of care been afforded the patient, there was greater than a 25 percent chance of improvement, recovery, or survival. *See* W.Va. Code. § 55-7B-3(b).

Plaintiffs in a medical malpractice case bear the burden of proving that negligence and lack of skill on the part of the medical provider proximately caused the injury suffered. *See Farley v. Shook*, 218 W.Va. 680, 629 S.E.2d 739 (2006). Expert testimony is usually required to meet that burden. *See Bellomy v. United States*, 888 F.Supp. 760, 763–64 (S.D. W.Va. 1995) (Haden, C.J.). Where a plaintiff does not produce expert testimony to show that a medical provider deviated from the standard of care, and the deviation caused

the injury complained of, the defending party is entitled to summary judgment. ***Harrison v. United States***, 2009 WL 36545 (S.D. W.Va. Jan. 6, 2009) (Copenhaver, J.); ***Sharpe v. United States***, 230 F.R.D. 452 (E.D. Va. 2005) (Freidman, J.).

With few exceptions not applicable here, the MPLA also requires expert testimony. It provides that the applicable standard of care and a defendant's failure to meet the standard of care, if at issue, "shall be established . . . by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court." W.Va. Code § 55-7B-7(a); *see also **Neary v. Charleston Area Med. Ctr.***, 194 W.Va. 329, 460 S.E.2d 464 (1995) (per curiam) (General rule in medical malpractice cases is that negligence can be proved only by expert witnesses).

The exclusion of Dr. Wong as an expert witness leaves the plaintiff with no expert to validate his claims. And it is far too late to allow the plaintiff to obtain a substitute. Expert disclosures were due June 24, 2022; discovery was completed September 9; the pretrial order is due December 5; the pretrial is set for December 19 with the trial set for January 10. Due to the plaintiff's involvement in this sham expert, this Court is loath to continue the matter.

Accordingly, the Government is entitled to summary judgment on the plaintiff's claims.

With regard to the issue of sanctions, Rule 15 of the Local Rules of Prisoner Litigation states that "pro se prisoner litigants are subject to sanctions that include, but are not limited to, those available to the Court under Rule 11 of the Federal Rules of Civil Procedure for the submission of false, improper or frivolous filings in the Court." Here, as shown above, the plaintiff, in multiple signed pleadings, violated Fed. R. Civ. P. 11(b) by misrepresenting to the Court his own conduct and his retained expert's conduct regarding preparation and

transmission of the Supplemental Report. Further, the plaintiff's conduct is sanctionable under Fed. R. Civ. P. 37(c) because he failed to provide information as required by Fed. R. Civ. P. 26(a), necessitating the United States' deposition of his retained expert and subsequent Motion to Compel Discovery. An appropriate sanction in this case, notwithstanding exclusion of the retained expert, is payment of the reasonable expenses caused by the plaintiff's failure to disclose the draft report.

Dr. Wong's deposition occurred on September 7, 2022, and Dr. Wong provided the undersigned with an invoice in the amount of $5,000.04 ($833.34/hour) for his deposition testimony. During the deposition, the United States obviously discovered that Dr. Wong did not prepare the supplemental report, thus necessitating the pending motion, as well as the Motion to Compel Discovery. In addition to taking Dr. Wong's deposition, the plaintiff's deceitful conduct caused the United States to incur $1,500.00 in costs for further review of the supplemental report by its expert neurologist, Dr. Matthew Smith.

Accordingly, this Court will impose sanctions in the amount of $6,500.04 for violating Fed. R. Civ. P. 11 and Fed. R. Civ. P. 37 and causing the United States to sustain unnecessary litigation costs.

For the reasons stated above:

1. Defendant's Motion to Strike Plaintiff's Expert Disclosure and Motion for Summary Judgment and Sanctions [**Doc. 149**] is **GRANTED**;

2. Plaintiff is precluded from offering any testimony or exhibits authored by Dr. Wong;

3.  The defendant is **GRANTED** summary judgment and this case will be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of this Court;

4.  Sanctions are hereby imposed upon the plaintiff in the amount of **$6,500.04**;

5.  Plaintiff's *pro se* Motion for Leave to Supplement Pursuant to Ruler 26(e) [**Doc. 155**] is **DENIED**;

6.  Plaintiff's *pro se* Motion for Summary Judgment to Determine Liability [**Doc. 125**], Defendant's Motion for Summary Judgment [**Doc. 126**], and Defendant's Motions *in Limine* [**Doc. 163**] are **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** November 28, 2022.

*[Signature]*

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE